PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

KEDRICK ANTONIO MASSENBURG,

      *Defendant-Appellant.*

No. 08-4373

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Senior District Judge.
(5:07-cr-00194-F-1)

Argued: January 29, 2009

Decided: April 29, 2009

Before WILLIAMS, Chief Judge, and NIEMEYER and
MOTZ, Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote
the opinion, in which Judge Niemeyer and Judge Motz joined.

## COUNSEL

**ARGUED:** G. Alan DuBois, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Raleigh, North Carolina, for Appel-
lant. Banumathi Rangarajan, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appel-

lee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

## OPINION

WILLIAMS, Chief Judge:

Kedrick Antonio Massenburg ("Massenburg") pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C.A. §§ 922(g) and 924 (West 2000). The district court sentenced Massenburg as an armed career criminal, imposing a term of 210 months imprisonment. On appeal, Massenburg asks us to vacate his conviction and grant him an opportunity to replead because the district court failed to inform him of his potential status as an armed career criminal — and the sentencing ramifications that would accompany such a designation — prior to accepting his plea. Massenburg did not properly object to the district court's error during the proceedings below, however, and because Massenburg has failed to show a reasonable probability that he would not have entered his plea but for this error we hold that Massenburg is not entitled to relief under the plain error standard of review.

I.

On February 25, 2007, Kedrick Antonio Massenburg found himself involved in an argument with a neighbor. At some point, Massenburg broke off the verbal engagement and returned to his residence, where he retrieved a .22 caliber rifle. Massenburg then returned to his neighbor's home and pointed the rifle at his neighbor. Based on this conduct, on August 2, 2007, Massenburg was named in a one-count

indictment filed in the U.S. District Court for the Eastern District of North Carolina. The indictment charged Massenburg with being a felon in possession of a firearm, in violation of 18 U.S.C.A. §§ 922(g) and 924.

On October 16, 2007, Massenburg appeared before the district court, which advised Massenburg that he was being charged as a felon in possession of a firearm and that the maximum penalty for that offense was ten years imprisonment. Thus advised, Massenburg entered a guilty plea. There was no written plea agreement.

Next, the U.S. Probation Officer prepared Massenburg's presentence investigation report ("PSR") and recommended that Massenburg be sentenced as an armed career criminal under 18 U.S.C.A. § 924(e) (West 2000 & Supp. 2008). The Probation Officer based this recommendation on several felony drug convictions that Massenburg sustained for offenses he committed in 1991 and 1992, when he was fourteen and fifteen years old. The PSR ultimately recommended a term of imprisonment of 180 to 210 months imprisonment, in light of the mandatory minimum sentence of fifteen years imprisonment required by § 924(e).

Prior to his sentencing hearing, Massenburg objected to the PSR on two grounds. First, he argued that his armed career criminal sentence enhancement was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the prior convictions which served as the basis for the enhancement were neither alleged in the indictment nor proven to a jury. Second, he argued that the convictions serving as the predicate offenses for his armed career criminal enhancement were actually part of the same course of conduct and thus did not constitute separate offenses for the purposes of § 924(e).

During the sentencing hearing, Massenburg again objected to his classification as an armed career criminal. His counsel made the following objection:

Okay. If I may, Your Honor, first of all, we object to the status of my client being characterized as an armed career criminal. We believe the most appropriate guideline of the advisory guidelines would be 77 to 96 months. We believe that would be Level 21 Offense Category and Criminal History VI. That's how I receive that.

Saying that as such, first of all, it's a *Blakely* and *Apprendi* objection, basically stating that the three convictions when he was 14 years old were not placed in the indictment. And we would ask that that was not proven through the indictment nor did he plead to that. So, we're doing an *Apprendi*.

The second thing is, Your Honor — the second part of the objection is, is his convictions according to this judgement [sic] suspending sentence and commitment on special probation states that the date of offense is 12/6/90.

\*\*\*

I'm asking this court to consider stating that those convictions do not meet the definition of armed career criminal.

(J.A. at 29-31.) The district court overruled Massenburg's objections and sentenced Massenburg to a sentence of 210 months imprisonment. At no point did Massenburg or his counsel mention Rule 11 of the Federal Rules of Criminal Procedure, and Massenburg did not move to withdraw his guilty plea. This appeal followed, and we possess jurisdiction under 18 U.S.C.A. § 3742(a) (West 2000).

## II.

The Federal Rules of Criminal Procedure require that a district court, before accepting a guilty plea, follow certain procedures, among which are the requirements that a defendant be informed of "any maximum possible penalty" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H)-(I). On appeal, Massenburg argues that his guilty plea was unknowing because the district court failed to advise him prior to his plea that he faced a potential mandatory minimum sentence of fifteen years imprisonment if sentenced as an armed career criminal.[1]

## A.

This is not the first time that we have confronted a situation where a district court failed to inform a defendant of a potential mandatory minimum during a plea colloquy. Most recently, in *United States v. Hairston*, 522 F.3d 336 (4th Cir. 2008), we vacated a guilty plea involving a defendant who, during the Rule 11 proceeding, was advised that he faced a minimum sentence of thirty years. *Id.* at 338. In fact, the defendant was ultimately designated an armed career criminal — a designation that resulted in a mandatory minimum sentence of forty-five years for that defendant. *Id.* at 339. In granting Hairston relief, we noted that "while the district court at the time of the Rule 11 proceeding could not have been cer-

---

[1]Massenburg also raises the oft-stated claim that the Sixth Amendment is violated whenever a district court increases a defendant's sentence as an armed career criminal because the district court is relying on facts — prior convictions — that were neither alleged in the indictment, nor found by a jury, nor admitted by the defendant. As even Massenburg notes, we have rejected this argument. *See United States v. Cheek*, 415 F.3d 349, 352 (4th Cir. 2005) ("It is thus clear that the Supreme Court continues to hold that the Sixth Amendment (as well as due process) does not demand that the mere fact of a prior conviction used as a basis for a sentencing enhancement be pleaded in an indictment and submitted to a jury for proof beyond a reasonable doubt.").

tain about whether Hairston would qualify as an armed career criminal, Rule 11 nonetheless required the court to anticipate the possibility and explain to Hairston the sentence that would be applicable if he had prior qualifying convictions." *Id.* at 340. We further explained that disclosure of an applicable mandatory minimum sentence in a PSR does not cure a Rule 11 violation when the PSR is prepared after the guilty plea has been accepted. *Id.* at 340 n.3.

Similarly, in *United States v. Goins*, 51 F.3d 400 (4th Cir. 1995), we addressed a district court's failure to apprise a defendant of a mandatory minimum sentence prior to accepting his plea. We noted that there was no evidence in the record suggesting that the defendant was aware of the mandatory minimum before entering his plea, and we vacated the sentence so that the defendant could have a chance to replead. *Id.* at 404-05.

Like the defendants in *Goins* and *Hairston*, Massenburg entered a guilty plea without the knowledge that a potential mandatory minimum sentence would alter his ultimate sentencing exposure. Massenburg was charged with being a felon in possession of a firearm in violation of § 922(g). A conviction under that statute ordinarily results in a sentence of a maximum of ten years imprisonment, *see* § 924(a)(2), and the district court so advised Massenburg. If a violator of § 922(g) previously has been convicted of three qualifying offenses, however, § 924(e) requires a mandatory minimum sentence of fifteen years imprisonment. The district court failed to advise Massenburg that he could face a fifteen-year mandatory minimum if designated an armed career criminal, and the record indicates that neither the government, the district court, nor Massenburg was aware of this possibility until the U.S. Probation Office prepared Massenburg's PSR. Because we held in *Goins* that "a [Rule 11] violation can not be considered harmless if the defendant had no knowledge of the mandatory minimum at the time of the plea," *Goins*, 51 F.3d at 403, Massenburg argues that he is entitled to relief.

Unlike the defendants in *Goins* and *Hairston*, however, Massenburg failed to note the district court's Rule 11 error during the proceedings below.[2] "If an error is not properly

---

[2]Massenburg argues that he did preserve his Rule 11 claim, and points to the following exchange between his counsel and the district court:

> The Court: Do you have any objections — well, you go over your objections, Mr. Ross. I'll try to resolve those first.

> Mr. Ross: Okay. If I may, your honor, first of all, we object to the status of my client being characterized as an armed career criminal. . . .

> Saying that as such, first of all, it's a *Blakely* and *Apprendi* objection, basically stating that the three convictions when he was 14 years old were not placed in the indictment. And we would ask that that was not proven through the indictment nor did he plead to that. So we're doing an *Apprendi*.

(J.A. at 29.)

Massenburg argues that his attorney's statement "nor did he plead to that" properly preserved claims related to the knowingness of his guilty plea. Context is often important, however, and in this case it is decisive. In isolation, one could understand the statement "nor did he plead to that" as an objection to the information provided to Massenburg when he entered his plea. When placed in context, however, it becomes clear that this was not the basis of the objection. We believe that Massenburg's attorney's statement "nor did he plead to that" was simply an attempt to apply the rule from *Apprendi v. New Jersey*, 530 U.S. 466 (2000) — that any facts used to increase a sentence beyond a prescribed statutory maximum must be proven to a jury or *admitted by the defendant*. *Apprendi*, 530 U.S. at 490; *see also United States v. Booker*, 543 U.S. 220, 232 (2005) ("[The Sixth Amendment right to have a jury find any fact that the law makes essential to a defendant's punishment] is implicated whenever a judge seeks to impose a sentence that is not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" (citing *Blakely v. Washington*, 542 U.S. 296, 303 (2004))). Massenburg was objecting to his sentence because he had not admitted the underlying facts supporting the determination that he was an armed career criminal, *i.e.*, he had not pleaded to them. He was not objecting to the district court's failure to alert him to his possible armed career criminal status during the Rule 11 colloquy. Because an objection on one ground does not preserve objections on different grounds, *see United States v. Ziskind*, 491 F.3d 10, 14 (1st Cir. 2007), Massenburg's objection to his sentence on *Apprendi* grounds did not preserve his claims that his plea was unknowing and obtained in violation of Rule 11.

preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed." *Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009). Thus, because he failed to object to the Rule 11 violation below, Massenburg must satisfy the plain error standard of review on appeal. *See United States v. Vonn*, 535 U.S. 55, 58-59 (2002) (plain error review applies to unpreserved Rule 11 claims).

B.

In order to satisfy the plain error standard Massenburg must show: (1) an error was made; (2) the error is plain; and (3) the error affects substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). The decision to correct the error lies within our discretion, and we exercise that discretion only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (citations, alterations, and internal quotation marks omitted). Importantly, the *defendant* bears the burden of satisfying each of the elements of the plain error standard. *Vonn*, 535 U.S. at 59.

There is no doubt that Massenburg has met his burden with respect to the first two requirements of the plain error standard. As discussed, the district court simply failed to alert Massenburg to the possibility that he faced sentencing as an armed career criminal, something it was required to do under Rule 11. *See* Fed. R. Crim. P. 11(b)(1)(I). Massenburg pleaded guilty while under the impression that he faced a maximum sentence of ten years imprisonment, despite the applicability of a fifteen-year mandatory minimum sentence under § 924(e). This is a plain error.

The existence of a plain error does not necessarily entitle Massenburg to relief, however. The plain error standard of review imposes the additional requirement that a defendant show that the error affected his substantial rights. *Olano*, 507

U.S. at 732. In the Rule 11 context, this means that Massenburg "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "[The] defendant must . . . satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 83 (citations and internal quotation marks omitted). We have reviewed the record, and we cannot say that Massenburg has met his burden in this case.

First, there are no statements on the record before us suggesting that Massenburg would not have pleaded guilty if the district court had properly informed him of the sentencing exposure that he faced. *See Hairston*, 522 F.3d at 342. In *Hairston*, for example, the defendant made the following statements upon being apprised of his sentence enhancement:

> Your Honor, I would not have signed a paper for 45 years. My kids would never see me again. I took the 30 years with the possibility that the government would keep me alive, that I would be able to spend whatever life I had left with my children.
>
> I would never have signed for no 45 years. That's not what I was left to understand that I was signing the paper for.

522 F.3d at 339 (citation omitted). Massenburg made no such statements in this case — in fact, he repeatedly answered "no" when asked by the sentencing court if he had any additional objections to his sentence beyond the *Apprendi* claims made by his counsel. Even on appeal, Massenburg has not alleged that he would have gone to trial in the absence of the district court's error. *See United States v. Dixon*, 308 F.3d 229, 235 (3d Cir. 2002) (declining to notice plain error in a case where "[defendant] never clearly and unmistakably asserted that had

he been correctly informed of the sentence he faced, he *would*, in fact, have pled not guilty and gone to trial").

Second, we find significant Massenburg's failure to move to withdraw his guilty plea after becoming aware that he faced sentencing as an armed career criminal. Although Massenburg correctly notes that disclosure of the mandatory minimum sentence in his PSR cannot cure the Rule 11 violation in his case, *see Goins*, 51 F.3d at 404, his failure to move to withdraw his guilty plea after learning of the mandatory minimum through the PSR is some evidence that he would have entered the plea regardless. A motion to withdraw "dispel[s] uncertainty about whether the defendant *really* wants to withdraw his plea . . . and go to trial." *United States v. Driver*, 242 F.3d 767, 770 (7th Cir. 2001).

Finally, there does not appear to be any dispute that the case against Massenburg is a strong one. Massenburg, a felon, picked up a .22 caliber rifle and pointed it at one of his neighbors. These facts satisfactorily establish guilt under § 922(g). Under these circumstances, we think we can legitimately question what Massenburg would have to gain by going to trial. *Cf. Dominguez Benitez*, 542 U.S. at 85 ("When the record made for a guilty plea and sentencing reveals evidence, as this one does, showing both a controlled sale of drugs to an informant and a confession, one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial.").

In the absence of any evidence in the record suggesting that he would not have entered his plea in the absence of the error in this case, we are left with only the existence of the error itself. And, the mere existence of an error cannot satisfy the requirement that Massenburg show that his substantial rights were affected. To grant Massenburg relief on this basis would amount to a holding that this type of error should be presumed prejudicial — a step that we are unwilling to take.

Significantly, it is rare that an error is presumed prejudicial under the plain error standard of review. We have noted that our recognition of such an error depends on consideration of two factors: "(1) the general risk that defendants subjected to the particular type of error will be prejudiced and (2) the difficulty of proving specific prejudice from that type of error." *United States v. White*, 405 F.3d 208, 218 (4th Cir. 2005). With respect to the latter factor, we have already catalogued the variety of ways that a defendant could prove specific prejudice from a district court's failure to inform him of a potential mandatory minimum sentence. As for the former, we do not consider this type of error's general risk of prejudice to a defendant to be so severe as to compel us to disregard the burdens that the plain error standard of review places on a defendant who has failed to lodge his objection before the district court. Defendants plead guilty for various reasons, many of which are wholly unrelated to the length of a potential sentence. A defendant may want to plead guilty based on the strength of the evidence against him, to avoid the emotional impact of a trial, or simply out of a willingness to atone for a crime committed. As the Supreme Court has noted:

> For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family.

*Brady v. United States*, 397 U.S. 742, 750 (1970). Because we believe that the factors enumerated in *White* do not support so holding, we cannot conclude that the error in this case should

be presumed prejudicial under the plain error standard of review.³

---

**³**Our conclusion on this point is not altered by the fact that some courts appear to have indulged in the presumption that the type of Rule 11 failure that occurred in this case affects a defendant's decision to plead. *See United States v. Padilla*, 23 F.3d 1220 (7th Cir. 1994). During oral argument, Massenburg specifically referenced the Seventh Circuit's decision in *Padilla*, where that circuit held that "ignorance about the necessity (or likelihood) of serving many years in prison strikes us as an informational lack so serious that unless strong indications to the contrary are apparent from the record a court should presume it influenced a defendant's decision to plead guilty." *Padilla*, 23 F.3d at 1222 (internal citation omitted). But, like *United States v. Goins*, 51 F.3d 400 (4th Cir. 1995), and *United States v. Hairston*, 522 F.3d 336 (4th Cir. 2008), *Padilla* involved review under the harmless error standard, *id.* at 1221, and errors that require automatic reversal under the harmless error standard of review can still be subjected to the plain error standard of review, with its requirement that the *defendant* show that the error affected the proceedings below. *See Puckett v. United States*, 129 S. Ct. 1423, 1431 (2009) ("Whether an error can be found harmless is simply a different question from whether it can be subjected to plain-error review.").

The Supreme Court's decision in *Puckett* illustrates the point. In a prior opinion, *Santobello v. New York*, 404 U.S. 257 (1971), the Court vacated a plea where the prosecution breached a plea agreement even though the breach did not affect the sentencing judge's ultimate decision. *Santobello*, 404 U.S. at 262. Though the error thus appeared harmless, the Court ruled that the "interests of justice" required that the plea be vacated and the case remanded. *Id.* Yet, in *Puckett*, when confronted with a similar error, the Supreme Court affirmed the defendant's conviction because of the operation of the plain error standard of review. As the Court explained:

> *Santobello* did hold that automatic reversal is warranted when objection to the Government's breach of a plea agreement has been preserved, but that holding rested not upon the premise that plea-breach errors are (like "structural" errors) somehow not *susceptible*, or not *amenable*, to review for harmlessness, but rather upon a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an "essential" and "highly desirable" part of the criminal process, 404 U.S., at 261-262, 92 S. Ct. 495. But the rule of contemporaneous objection is equally essential and desirable, and when the two collide we see no need to relieve the defendant of his usual

Absent a presumption of prejudice, Massenburg is left only to appeal to our desire for an adjudicatory process that is free from error. Errors are commonplace, however, and our affection for procedural perfection cannot operate to the detriment of our commitment to other, equally important, principles of adjudication. While correcting the error in this case would cost little in terms of time or effort, doing so would spurn a standard of review that serves the important goals of encouraging the timely raising of claims and objections to the district court and preventing "sandbagging" by litigants. Granting Massenburg the relief he seeks on the existence of the error alone would render the plain error standard of review toothless, and we refuse to do so. *See Puckett*, 129 S. Ct. at 1433 ("Any trial error can be said to impair substantial rights if the harm is defined as 'being convicted at a trial tainted with [fill-in-the-blank] error.' . . . Eliminating the third plain-error prong through semantics makes a nullity of *Olano*'s instruction that a defendant normally 'must make a specific showing of prejudice' in order to obtain relief." (citation omitted)).

---

burden of showing prejudice. See *Olano*, 507 U. S., at 734, 113 S. Ct. 1770.

*Puckett*, 129 S. Ct. at 1432 (footnote omitted).

Nor is our ultimate conclusion affected by Massenburg's attempts to characterize the error in his Rule 11 colloquy as a structural error. It is true that Rule 11 exists to protect constitutional interests, but we note that courts consistently treat simple failures to apprise defendants of applicable mandatory minimum sentences as Rule 11 violations that are amenable to harmless error review. *See Goins*, 51 F.3d at 402; *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc) ("[I]f a mistake is made by the district court during the Rule 11 colloquy, it shall be reviewed for harmless error regardless of whether, under our prior system, the error or omission would have been classified as either total or partial, or would have been found to implicate either a core or non-core concern."); *cf. United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.6 (2004) ("The omission of a single Rule 11 warning without more is not colorably structural."); *Johnson v. Pinchak*, 392 F.3d 551, 566 n.6 (3d Cir. 2004) (noting and listing "significant prior precedent for requiring harmless error analysis in the plea bargaining context").

C.

To conclude, we have little doubt that a district court's failure to alert a criminal defendant to a potential mandatory minimum sentence is a serious omission that strikes at the core of Rule 11. The Rule exists in order to ensure that "a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy v. United States*, 394 U.S. 459, 464 (1969). But, Massenburg has presented no evidence suggesting that the omission in his case affected his decision to plead — a burden that he bears. Thus, we must conclude that he has failed to satisfy his burden under *Dominguez Benitez* and *Vonn* of showing that the district court's error affected his substantial rights. The error therefore does not entitle him to relief.

III.

For the foregoing reasons, Massenburg's challenge to his conviction and sentence must fail. The judgment of the district court is

*AFFIRMED*.